# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* A.F.

No. 19-0997 (Fayette County 19-JA-51)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.E., by counsel Thomas A. Rist, appeals the Circuit Court of Fayette County's October 4, 2019, order terminating his parental rights to A.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Vickie L. Hylton, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to require the guardian to file a report at least five days prior to the dispositional hearing, denying his motion for a post-adjudicatory improvement period, and permitting the DHHR to use his silence to introduce inappropriate evidence.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner suffered from severe substance abuse issues that impacted his ability to properly parent the child. Specifically, the petition alleged that the eleven-year-old child disclosed that he witnessed drug use in the home, indicated that many other drug users frequented the home, had a picture of drug paraphernalia in petitioner's bedroom, and expressed belief that petitioner sold drugs. The petition

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]On appeal, technically, petitioner does not raise an assignment of error regarding the termination of his parental rights.

1

further alleged that, as a result of petitioner's substance abuse, the child lived a "transient" lifestyle in several different places and that the child routinely missed or was late for school. Prior to the petition's filing, the child underwent a forensic interview at a Child Advocacy Center, during which he provided additional details of the extensive drug activity in the home. Petitioner thereafter waived his preliminary hearing.

Petitioner failed to appear for a subsequent adjudicatory hearing in May of 2019, although he was represented by counsel. At that time, the circuit court found that petitioner abused and/or neglected the child due to his substance abuse. The circuit court further noted petitioner's voluntary absence from the proceedings, including his failure to attend hearings and multidisciplinary team ("MDT") meetings. Approximately one week later, petitioner was arrested and remained incarcerated throughout the remainder of the proceedings.

Prior to the dispositional hearings held over two days in September of 2019, petitioner's counsel informed the parties that petitioner wished to voluntarily relinquish his parental rights. When the parties convened for the dispositional hearing, however, petitioner indicated that he no longer wished to voluntarily relinquish his rights. Additionally, it is undisputed that the child's guardian failed to file a report at least five days prior to the hearing per Rule 18a(b) of the West Virginia Rules of Procedure for Abuse and Neglect Proceedings. During one of the hearings, petitioner orally moved for a post-adjudicatory improvement period, which motion the circuit court denied. A DHHR employee testified to petitioner's extensive history of substance abuse and failure to address that issue during the proceedings. Essentially, the witness testified to petitioner's total failure to participate in the proceedings in any way, including his failure to even contact the DHHR to inquire about the child for six months. After petitioner refused to testify, the circuit court found that it would make a "negative inference" in relation to his failure to respond to the DHHR's probative evidence in the matter. The DHHR then discussed petitioner's arrests for a variety of drug charges during the proceedings. After hearing the parties' arguments, the circuit court took the matter under advisement so that it could review the child's forensic interview.

In the order on appeal, the circuit court found that the child's interview established that he "observed drug usage in the home" and that he specifically witnessed petitioner "put a pill in a bag and crush it up and put it in a meth pipe." Further, the child saw "people use needles . . . to inject controlled substances" and had several of his game consoles "disappear under circumstances suggesting they were sold or traded for controlled substances." According to the child's interview, "he [did] not feel safe in the home" and feared that petitioner would flee from the state with him if returned to petitioner's custody. Ultimately, the circuit court found that petitioner "refused to acknowledge his drug addiction," despite the fact that he was "arrested twice in drug busts since the case began." According to the circuit court, petitioner "refused to participate in services necessary for reunification" and had a long history of Child Protective Services involvement. Based on this evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and terminated his parental rights to the child.[3] It is from the dispositional order that petitioner appeals.

---

[3]The mother voluntarily relinquished her parental rights below. According to respondents, the permanency plan for the child is adoption in the current foster home.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that it was error to proceed to disposition without requiring the guardian to file a report at least five days prior to the hearing. According to Rule 18a(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings,

> [a] guardian *ad litem* should adhere to the Guidelines for Children's Guardians Ad Litem in Child Abuse and Neglect Proceedings set forth in Appendix A of these Rules and submit a written report to the court and provide a copy to all parties at least five (5) days prior to the disposition hearing that complies with the requirements set forth in Section D(8) of the Guidelines and Appendix B of these Rules.

Petitioner is correct that this rule indicates that a guardian should file such a report within the applicable timeframes, but he cites to no authority that would require the vacation of a dispositional order in the absence of such report.

Instead, petitioner cites to West Virginia Code § 49-6-2(c)—a statute that was recodified as West Virginia Code § 49-4-601(h) in 2015—to argue that his right to be heard was infringed by the guardian's failure to submit the report. According to petitioner, this failure resulted in his "limited ability to present his case at the dispositional hearing." However, petitioner provides no explicit example of how his defense could have possibly been impacted by the lack of a report. It is true that a parent is entitled to "a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses" under West Virginia Code § 49-4-601(h). What petitioner fails to recognize, however, is that he was afforded this opportunity at two separate dispositional hearings. We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and

the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). Because petitioner cannot establish how his defense to the DHHR's seeking termination of his parental rights at disposition was in any way hampered by the lack of a report from the guardian, we find that he is entitled to no relief in regard to this assignment of error and vacation of the order on appeal is unnecessary.[4]

Next, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. According to petitioner, the circuit court never seriously considered granting petitioner an improvement period because of his incarceration, which petitioner argues was the sole factor upon which his motion was denied. However, petitioner's argument misstates the record and fails to substantively address the standard regarding the granting of improvement periods and his failure to satisfy the burden necessary to obtain one. West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Further, we have noted that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). On appeal, petitioner cites to no evidence to show that he satisfied his burden of establishing that he was likely

---

[4]Although we find that petitioner is not entitled to relief on appeal in regard to his allegations concerning the guardian ad litem, we nonetheless remind this and all guardians ad litem to fully comply with the requirements this Court has established for guardians ad litem in these cases. In addressing guardians' responsibilities in abuse and neglect proceedings, the Court has explicitly held that

> Rule XIII of the West Virginia Rules for Trial Courts of Record provides that a guardian ad litem shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court. Rules 1.1 and 1.3 of the West Virginia Rules of Professional Conduct, respectively, require an attorney to provide competent representation to a client, and to act with reasonable diligence and promptness in representing a client. The Guidelines for Guardians Ad Litem in Abuse and Neglect cases, which are adopted in this opinion and attached as Appendix A, are in harmony with the applicable provisions of the West Virginia Code, the West Virginia Rules for Trial Courts of Record, and the West Virginia Rules of Professional Conduct, and provide attorneys who serve as guardians ad litem with direction as to their duties in representing the best interests of the children for whom they are appointed.

Syl. Pt. 5, in part, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993).

to substantially comply with the terms of the improvement period.[5] Moreover, while he argues that the circuit court focused only on his incarceration, the record reflects that petitioner's failure to acknowledge his substance abuse problem or otherwise take any steps to remedy this condition precluded him from obtaining an improvement period. Indeed, this Court has long held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's failure to take even the modest step of acknowledging the conditions of abuse and neglect giving rise to the petition, we find no abuse of discretion in the circuit court's denial of his motion for an improvement period.

Finally, petitioner argues that "the DHHR improperly admitted evidence as an 'adverse inference' against him." At the outset, it is unclear exactly what petitioner is arguing in regard to this assignment of error, given that he appears to conflate two legal issues that are unrelated. The first is this Court's prior direction that circuit courts may consider a parent's silence in the face of probative evidence offered against them in abuse and neglect proceedings "as affirmative evidence of that individual's culpability." Syl. Pt. 2, in part, *W. Va. Dep't of Health and Human Res. Ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). The second is merely an evidentiary issue wherein petitioner asserts that the prosecutor was permitted to "testify[] about any fact that the DHHR wanted to get into evidence." It is unclear how petitioner believes these two issues are related, other than the fact that the DHHR addressed petitioner's various arrests following petitioner's invocation of his right against self-incrimination. While petitioner attempts to tie these two issues together, it is clear that each is a distinct issue that has no impact on the other.

In regard to the first issue, we find no error in the circuit court presuming petitioner's culpability due to his failure to respond to the evidence introduced against him. As the circuit court found, petitioner "did not testify in this matter to refute the allegations of abuse/neglect" and, as a result, it held a "negative inference" against him in regard to those allegations. While petitioner attempts to tie this negative inference to the DHHR's discussion of his various arrests, the record is clear that the presumption of his culpability extends well beyond those limited facts. Given that petitioner was adjudicated upon issues of substance abuse and failed to rebut the DHHR's evidence against him, the circuit court's inference extended beyond petitioner's arrests and included all conduct which the DHHR proved throughout the proceedings. In keeping with the holding from *Doris S.* above, we find no error.

As to petitioner's assertion that the prosecutor was permitted to simply "testify" to petitioner's various arrests and the fact that the child was subjected to drug sales, use, and other

---

[5]It is also important to note that West Virginia Code § 49-4-610(2)(A) requires that "[t]he [parent] file[] a written motion requesting the improvement period." According to the record in this matter, no such written motion was filed below.

conditions in the home, we find no error. Petitioner couches the DHHR's arguments on this issue as akin to testimony, when, in fact, the DHHR was simply reiterating facts already in evidence. Specifically, the child's forensic interview was introduced into evidence at an earlier hearing and contained the child's detailed disclosures about the substance abuse issues that he witnessed in the home. As to petitioner's argument regarding his arrests, the record shows that the circuit court was fully aware of them, as petitioner had been incarcerated at various times during the proceedings. Indeed, the record shows that petitioner's incarceration was noted in court summaries, he missed an MDT meeting due to his incarceration, and that at least one hearing was continued due to a failure to have petitioner transported to the hearing from the facility in which he was housed. Further, petitioner admits on appeal that he was arrested for these charges. As such, it is unclear why petitioner believes that counsel for the DHHR was "testifying" about petitioner's various arrests at the dispositional hearing, as opposed to arguing, based on facts in evidence, that termination of petitioner's parental rights was the appropriate resolution. As such, we find that petitioner is entitled to no relief in regard to this assignment of error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 4, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison